## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFFORD FAKE, | : | Civil No. 3:14-cv-700 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| DAVID W. PITKINS, *et al.*, | : | |
| Respondents | : | |

### MEMORANDUM

On April 18, 2006, Petitioner Clifford Fake ("Fake"), pled guilty to neglect of a care-dependent person, aggravated assault, theft by deception, forgery, receiving stolen property, and related offenses, in the Court of Common Pleas of Lebanon County, Pennsylvania. (Doc. 1). On August 17, 2006, Fake was sentenced to an aggregate term of imprisonment of twenty-two (22) years and one (1) month to fifty-eight (58) years. (*Id.*). On April 9, 2014, Fake filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence. (*Id.*). For the reasons set forth below, the petition will be denied as untimely.

### I. Background

The charges stem from Fake's involvement in the financial and physical abuse of elderly persons who resided in the assisted living facility operated by Fake and his wife.

On March 15, 2005, a criminal complaint was filed charging Fake with two (2) counts of Neglect of a Care Dependent Person, one (1) count of Aggravated Assault, one (1) count

of Simple Assault, one (1) count of Recklessly Endangering Another Person, and five (5) counts of Criminal Conspiracy. *Commonwealth v. Fake*, Docket Number CP-38-CR-00988-2005.

On May 10, 2005, a criminal complaint was filed charging Fake with three (3) counts of Neglect of a Care Dependent Person and three (3) counts of Conspiracy. *Commonwealth v. Fake*, Docket Number CP-38-CR-00997-2005.

Also on May 10, 2005, another criminal complaint was filed charging Fake with four (4) counts of Neglect of a Care Dependent Person, one (1) count of Simple Assault, four (4) counts of Recklessly Endangering Another Person, twenty (20) counts of Conspiracy, one (1) count of Theft by Unlawful Taking or Disposition, two (2) counts of Forgery, one (1) count of Unlawful Restraint, one (1) count of False Imprisonment, one (1) count of Aggravated Assault, one (1) count of Receiving Stolen Property, two (2) counts of Theft by Deception, one (1) count of Sales of Unstamped Cigarettes, and one (1) count of Possession of Unstamped Cigarettes. *Commonwealth v. Fake*, Docket Number CP-38-CR-00996-2005.

On April 18, 2006, Fake pled guilty pursuant to a negotiated plea agreement with the Commonwealth. (Doc. 12-8, Guilty Plea Transcript). On July 7, 2006, following the entry of his guilty plea, but prior to sentencing, Fake filed a motion to withdraw his guilty plea. (Doc. 16-2). On August 15, 2006, following a hearing, the trial court denied the motion. (Doc. 16-

5).

On August 17, 2006, Fake was sentenced to a total aggregate sentence of twenty-two (22) years' and one (1) month to fifty-eight (58) years' incarceration. (Docs. 12-5, 12-6, 12-7; Doc. 16-6).

On September 14, 2006, Fake filed a timely direct appeal alleging that the trial court erred in denying his motion to withdraw his guilty plea. (Doc. 12-9, *Commonwealth v. Fake*, 1699 MDA 2006 (Pa. Super.)). On September 24, 2007, the Pennsylvania Superior Court affirmed the judgment of sentence and affirmed the trial court's denial of Fake's motion to withdraw his guilty plea, finding that the request to withdraw his guilty plea was "unreasonable and severely prejudices the Commonwealth's case." (*Id.*). On October 24, 2007, Fake filed a petition for allowance of appeal to the Pennsylvania Supreme Court. *Commonwealth v. Fake*, 885 MAL 2007 (Pa.). The Pennsylvania Supreme Court denied *allocatur* on April 16, 2008. *Id.* Fake did not file a petition for writ of certiorari to the United States Supreme Court, therefore his judgment of sentence became final ninety (90) days later on July 15, 2008.

On May 9, 2008, Fake timely filed his first *pro se* petition for post conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46, asserting constitutional violations, ineffective assistance of counsel claims, and that his guilty plea was unlawfully induced. (Doc. 12-10; Doc. 12-11). The court appointed counsel

3

to represent Fake in the PCRA proceedings. (*Id.*). On October 3, 2008, the PCRA court conducted a hearing. (Doc. 12-14; Doc. 12-15). On December 26, 2008, the PCRA court denied Fake's petition. (Doc. 12-13).

On January 26, 2009, counsel for Fake filed a Notice of Appeal to the Pennsylvania Superior Court. (Doc. 13-2). Fake subsequently filed a *pro se* Notice of Appeal to the Pennsylvania Superior Court. On April 29, 2009, the Superior Court issued an Order which declared its intent to proceed solely on the appeal filed by counsel. (Doc. 13-2). On January 21, 2010, the Superior Court affirmed the PCRA court's December 26, 2008 decision. (*Id.*). Fake did not seek review with the Pennsylvania Supreme Court.

On April 28, 2010, Fake filed a second petition under the Post Conviction Relief Act. (Doc. 13-3). On July 16, 2010, the trial court issued an Order which indicated its intention to dismiss Fake's petition as untimely, and without a hearing. (Doc. 13-5). On July 26, 2010, Fake filed a response. (Doc. 13-6). On August 5, 2010, the PCRA court dismissed Fake's second PCRA petition as untimely. (Doc. 13-7). On September 3, 2010, Fake filed a Notice of Appeal to the Pennsylvania Superior Court. (Doc. 13-8). On May 17, 2011, the Superior Court affirmed the PCRA court's dismissal. (*Id.*).

On May 24, 2011, Fake filed his third PCRA petition. (Doc. 13-9). On May 25, 2011, the trial court issued an Order which indicated its intention to dismiss Fake's petition as untimely, and without a hearing. (Doc. 13-10). On August 31, 2011, the PCRA court

dismissed Fake's petition as untimely. (Doc. 13-11). On September 11, 2011, Fake filed a Notice of Appeal to the Pennsylvania Superior Court. (Doc. 13-12). On March 30, 2012, the Superior Court affirmed the dismissal. (Doc. 13-13).

On October 25, 2013, Fake filed a fourth PCRA petition. (Doc. 13-14). On November 5, 2013, the PCRA court denied the petition as untimely. (Doc. 13-15).

On February 1, 2011, Fake filed an initial federal petition for writ of habeas corpus raising the same issues raised in the current petition. *Fake v. Cameron, et al.*, No. 11-cv-227 (M.D. Pa.). The initial habeas petition was dismissed without prejudice for failure to exhaust state court remedies. (*Id.*).

Fake filed the instant federal habeas petition on April 9, 2014. (Doc. 1).

## II. Discussion

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. See *Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

Fake was sentenced on August 17, 2006. Under the plain terms of 28 U.S.C. § 2244(d)(1)(A), his judgment of sentence became final on July 15, 2008, at the expiration of the ninety (90) day period to seek certiorari to the United States Supreme Court. See *Nara*, 264 F.3d at 314; 28 U.S.C. § 2244(d)(1)(A). The one-year period for the statute of limitations would commence running as of that date. However, as discussed below, Fake successfully tolled the AEDPA's filing period when he filed his first PCRA petition on May 9, 2008.

### A. Statutory Tolling

Section 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Fake's judgment of sentence became final on July 15, 2008. The one-year period for the statute of limitations would commence running as of that date. However, when Fake filed his first PCRA petition on May 9, 2008, the AEDPA's filing period was statutorily tolled, with the entire 365 days of the one-year filing period remaining. The statute remained tolled until February 22, 2010, when the time period expired for Fake to seek review of the denial of his PCRA petition with the Pennsylvania Supreme Court. The statute then began running. The 365 days remaining in which to file his federal petition expired on February 22, 2011. Fake's federal habeas petition was filed on April 9, 2014, well after the expiration of the limitations period.

Fake filed additional PCRA petitions on April 28, 2010, May 24, 2011, and October 25, 2013. The state court denied each of the PCRA petitions as untimely. An untimely PCRA petition is not "properly filed" and, therefore, does not toll the statute of limitations. See Pace v. Diguglielmo, 544 U.S. 408, 417 (2005) (holding that "[b]ecause the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2254(d)(2)"). See also Merritt v. Blaine, 326 F.3d 157, 167-68 (3d Cir. 2003). As a result, Fake's additional, untimely PCRA petitions fail to provide

any statutory tolling of the AEDPA's statute of limitations. Consequently, Fake must establish that he is entitled to sufficient equitable tolling of the AEDPA's limitations period in order for his petition for a writ of habeas corpus to be considered timely filed.

### B. Equitable Tolling

Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006); *LaCava v. Kyler*, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. *See Merritt*, 326 F.3d at 168. Generally, a litigant seeking equitable tolling must establish the following two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.

With respect to the diligent pursuit of rights, the petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. *See Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. *See LaCava*, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. *See Jones*, 195 F.3d at 159; *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

Fake does not indicate that any extraordinary circumstances obstructed his pursuit of post-conviction relief in either state court or federal court, and he has never asserted his rights in the wrong forum.

As stated, in determining whether extraordinary circumstances exist to warrant the application of equitable tolling, the Court must also examine Fake's due diligence in pursuing the matter under the specific circumstances he faced. *See Traub v. Folio*, 2004 WL 2252115, *2 (E.D. Pa. 2004) (citing *Schlueter v. Varner*, 384 F.3d 69 (3d Cir. 2004) (affirming dismissal of the habeas petition as time-barred and not entitled to equitable tolling because lengthy periods of time had elapsed following the petitioner's conviction before he sought relief)). It is petitioner's burden to show that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely. *Id.* Under the circumstances of this case, Fake fails to allege any steps that he took to timely file the instant federal habeas petition and that he was somehow prevented from timely filing. As

such, Fake did not act in a reasonably diligent fashion and equitable tolling of the AEDPA statute of limitations is not warranted in this case.

C.  **Actual Innocence Claim**

A claim of actual innocence may serve as both an exception to procedural default and as an equitable exception to the statute of limitations. *See McQuiggin v. Perkins*, --- U.S. ---, 133 S.Ct. 1924, 1931 (2013); *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). In *McQuiggin*, the Supreme Court reaffirmed that there is an "equitable exception" to the statute of limitations applicable to habeas claims, but "only when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) (quoting *McQuiggin*, 133 S.Ct. at 1933). Thus, actual innocence, if proved, serves as a gateway through which a petitioner may pass when faced with procedural impediments such as the expiration of the statute of limitations. *McQuiggin*, 133 S.Ct. at 1928. The Supreme Court emphasized, however, the demanding nature of the test for permitting the gateway to open: "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 133 S.Ct. at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new

reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The limited nature of this exception is underscored by the Court's explicit observation that "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 133 S.Ct. at 1928.

Fake maintains that he is actually innocent of the crimes to which he pled guilty, and he should be allowed to withdraw his guilty plea and proceed to trial. He states that there was evidence available in state court that is insufficient to support his guilt, his trial counsel was ineffective for failing to discuss this evidence with him, and, as a result, he was unable to provide a valid plea. The purported new evidence relates to Jeffrey Sees, a resident at the personal care home operated by Fake. (*See* Docs. 2, 17). Fake claims that the evidence reveals that Mr. Sees was taking several medications that caused dizziness and may have caused him to fall and sustain injuries. He thus asserts that this evidence would have established that he was innocent of assaulting Mr. Sees. Fatal to the instant petition, actual innocence claims focus on "new" evidence - "relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327-28. Fake has not produced any "new" evidence that would persuade the Court that the outcome of his case would have been different. To the contrary, all of the evidence submitted by Fake predates his guilty plea and was turned over by the Commonwealth during discovery. (Doc. 2, pp. 27-88).

Evidence is not "new" if it was available at trial. *Hubbard*, 378 F.3d at 340-41 (stating that petitioner's allegation of actual innocence is "nothing more than a repackaging of the record as presented at trial" and thus he could not show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence). Furthermore, the Pennsylvania Superior Court previously addressed this exact claim in its opinion affirming the denial of Fake's PCRA petition. (Doc. 2-1, *Commonwealth v. Fake*, No. 441 MDA 2009 (Pa. Super. 2010)). The Superior Court noted that during the PCRA hearing, trial counsel testified that he discussed with Fake "at some length" the government's evidence and witnesses. (Doc. 2-1, p. 7). The Pennsylvania Superior Court found that trial counsel "did in fact discuss the Commonwealth's evidence . . . . [trial counsel] disclosed the Commonwealth's evidence to [Fake] and adequately discussed that evidence with him." (Doc. 2-1, pp. 7, 9).

Even more compelling is that Fake pled guilty to the charges, and admitted under oath that he was guilty of these crimes. Thus, he cannot now claim actual innocence to invalidate his guilty plea. *See, e.g., Williams v. Holland*, 2014 WL 1385192, at *4 (E.D. Ky. Apr. 9, 2014) (rejecting petitioner's actual innocence claims based on *McQuiggin* where he pled guilty to the offenses); *Sidener v. United States*, 2013 WL 4041375, at *3 (C.D. Ill. Aug. 8, 2013) (rejecting *McQuiggin* claim because "Petitioner's admission to the factual basis demonstrates that Petitioner cannot make a showing of actual innocence").

During the guilty plea hearing, the trial judge questioned Fake about each of the thirty-four counts individually. For each count, the trial judge asked Fake whether he had any questions. Fake responded that he did not. Furthermore, Fake filled out three separate guilty plea colloquies, one for each docket, after reviewing the colloquies with his attorney.

The Pennsylvania Superior Court affirmed the trial court's denial of Fake's motion to withdraw his guilty plea, finding as follows:

> Fake argues that he was under a self-imposed stress and pressure to protect his wife and therefore plead guilty, not understanding the charges to which he was pleading guilty. We agree with the trial court's findings and find no merit to Fake's argument. During the guilty plea hearing, the Honorable John C. Tywalk questioned Fake about each of the 34 counts. For each count the trial court individually explained what the Commonwealth alleged Fake had done and asked Fake whether he had any questions regarding any of the counts, to which Fake stated he had none and pled guilty to each individual count. Fake also filled out three different guilty plea colloquies, for each docket, after going over it with his attorney.
>
> In denying Fake's motion the trial court stated:
>
>> There is a reason why I go through the process that I go through when I take somebody's guilty plea and today is a good example of why I do it the way I do it. I asked you 32 or 34 times if you're pleading guilty because you actually committed a certain offense, after I explained those offenses to you, and you told me yes. And I believed you then and I still believe you today.
>> . . .
>
> (N.T. Motion to Withdraw Guilty Plea, 8/15/06, pp. 33-34).

(Doc. 12-9, p. 3).

Fake's plea was entered knowingly and voluntarily, and there is no just reason to allow him to withdraw this plea. His instant claim of innocence is a complete and utter contradiction to the representations that he made when he took the stand before the trial judge, stated 32 to 34 times that he was pleading guilty because he actually committed the offenses, and swore to the veracity of his testimony. Fake pled guilty and the state courts have repeatedly rejected his attempts to withdraw the guilty plea as improper. Because Fake's case is not one of those "rare" cases, which presents new reliable evidence that was not previously available, the equitable exception to § 2244(d)(1) does not apply.

### D. Request for a Hearing

In his traverse, Fake requests an evidentiary hearing. (Doc. 17, p. 20). Under 28 U.S.C. § 2254(e)(2), if a habeas applicant has "failed to develop the factual basis of a claim in State court proceedings," the court shall not hold an evidentiary hearing unless the case falls within the very limited circumstances listed in section 2254(e)(2)(A) and (B). *Goldblum v. Klem*, 510 F.3d 204, 220-21 (3d Cir. 2007), *cert. denied*, 555 U.S. 850 (2008). Section 2254(e)(2)(A) and (B) requires a petitioner to show that: (1) his claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or a factual predicate that could not have been previously discovered through the exercise of due diligence;" and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional

error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. 2254(e)(2)(A) and (B). If the petitioner satisfies these requirements, then the district court is permitted under the AEDPA, though not required, to grant an evidentiary hearing. The decision to grant an evidentiary hearing is "left to the sound discretion of district courts." *Goldblum*, 510 F.3d at 221 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2008)).

As discussed above, Fake's petition is untimely and a hearing is not required to address the timeliness of the habeas petition. Additionally, petitioner has not asserted any of the limited circumstances listed in sections 2254(e)(2)(A) and (B). Consequently, Fake's request for a hearing will be denied.

## III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without

reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the present matter, jurists of reason would not find the disposition of this case debatable. Accordingly, a certificate of appealability will not issue.

## IV. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be denied as untimely. A separate Order will issue.

Dated: September 29, 2017

Robert D. Mariani
United States District Judge